**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Criminal Action No. 07-46-SLR |
| | ) | |
| CHAD MERCER | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S MEMORANDUM OF LAW IN RESPONSE TO DEFENDANT'S**
**MOTION TO SUPPRESS EVIDENCE AND STATEMENTS**

Defendant Chad Mercer has filed a Motion to Suppress Evidence and Statements (D.I. 12), seeking to exclude all evidence seized from Mr. Mercer, including all statements made to law enforcement officers on or around February 21, 2007. Defendant's motion fails to set forth a colorable basis for the requested relief. Accordingly and for the reasons set forth below, the government respectfully requests that the Court deny the motion.

**I.     BACKGROUND**

In the early morning hours of February 21, 2007, the New Castle County Police were investigating a domestic argument at 12 Metten Road, Brookside, in Newark.[1] The investigation revealed that the complainant's ex-boyfriend had fled the scene in her vehicle, without her authorization. While parked in front of the residence, the police officer observed a vehicle exiting the development at a high rate of speed. Believing that this vehicle might be the subject

---

[1] Defendant's motion identifies the date of relevant events as March 21, 2007. For purposes of its opposition, the Government has assumed this to be a typographical error and has responded accordingly.

of his investigation and concerned about the high rate of speed, the office followed the vehicle and after several minutes activated the emergency equipment, signaling the vehicle to stop. As the vehicle slowed, the officer observed a passenger and the driver moving around in the vehicle. As the vehicle stopped, the passenger, subsequently identified as defendant Chad Mercer ran from the car.

Mercer fled into the front yard of a house located at 135 Brookside Boulevard. Despite repeat orders from the police officer to stop, Mercer continued to run and during the course of the chase yelled to the officer that he was running because he "had warrants." As both approached a fence on the side of 135 Brookside Boulevard the officer attempted to use his "taser" to stop Mercer. However, the taser malfunctioned and Mercer, continuing to flee, ran onto the porch. A struggle ensued, and shortly thereafter the police officer controlled Mercer, with the assistance of a second officer placed him in handcuffs and secured him in his patrol car. When he returned to the porch to retrieve his taser, the officer discovered a gun on the porch where Mercer had been standing at the point the struggle began. The weapon, subsequently identified as a Smith & Wesson .357 Magnum Revolver contained six rounds,

At the scene, the police officer orally advised Mercer of his Miranda rights at which time Mercer stated he was aware of those rights and agreed to speak with the officer about the incident. At that time, Mercer stated that while drunk, he had been walking along Marrows Road when a man, who he knows only as "Black," stopped and offered him a ride. As the two drove through Brookside, they appeared to be following a green vehicle. When the police officer attempted to pull them over, Black threw a gun at him and told him to run or else he would "pop" him. Mercer also stated that he ran because he had a warrant. Mercer was then

transported back to New Castle County Police Headquarters.  At approximately 2:55 A.M., Mercer submitted to a Breathalyzer test which yielded a .14% blood alcohol level.

Over three hours later, at 6:05 A.M., Mercer was again advised of his Miranda rights via a written form.  Mercer signed the form and agreed to speak with the officer in an audio taped interview.  In this second interview, which lasted approximately a half hour, Mercer repeated his earlier story and elaborated on his acquaintance with Black, stating that he knew him from the basketball courts in Wilmington.  Later in the interview, Mercer modified his story and stated that as the officer was pulling them over, Black reached under the seat and handed him an object that Mercer knew to be a gun.  Mercer reported that he ran due to his outstanding warrants and resisted arrest out of fear.  He also admitted that he dropped the gun on the porch of 135 Brookside Boulevard.

Subsequent investigation revealed that Mercer had prior felony convictions and that the handgun confirmed that it was capable of firing a projectile and was manufactured outside of Delaware.  Based upon this evidence, a federal grand jury indicted Mercer on one count of unlawful possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2).

## II.     ARGUMENT

The Motion to Suppress challenges the validity of the vehicle stop and subsequent pursuit of Mercer on the grounds that there was no reasonable suspicion for those actions. "[U]nreasonable searches and seizures" are prohibited by the Fourth Amendment.  U.S. Const. amend IV.  Generally, a warrant based upon probable cause is required for a search.  However, where a police officer has a reasonable suspicion of criminal activity, the officer may conduct a brief investigatory stop.  See United States v. Brown, 448 F.3d 239, 244 (3d Cir. 2006) citing

Terry v. Ohio, 392 U.S. 1 (1968).  Moreover, Fourth Amendment rights do not attach until an individual has been seized, and reasonable suspicion must be analyzed at the moment of seizure. Id. at 245.

     Here, the government will demonstrate that the officer had reasonable suspicion for both the initial stop of the vehicle and the subsequent pursuit and seizure of Mercer.  The Government expects that testimony will show that while investigating a domestic dispute in which a vehicle was taken, the officer observed the vehicle traveling at a rate of speed in excess of speed limits in a residential community at approximately 2 A.M.  As he followed the vehicle, the officer observed furtive movements of both the driver and passenger.  The speeding by itself provided a reasonable basis to pull over the vehicle.  These observations coupled with Mercer's subsequent flight and admission of outstanding warrants also justify the subsequent seizure of Mercer.  See id. at 251 (corroborative evidence for reasonable suspicion includes "nervous, evasive behavior or flight from police") (internal citation omitted).  As the factual record supports the legality of both the stop of the vehicle and subsequent seizure of Mercer in so far as Defendant's motion seeks to suppress evidence based upon the illegality of those actions, it should be denied.

     Mercer also seeks to suppress statements he made to the police subsequent to his arrest on the bases that his Miranda waiver was invalid and his statements involuntary.  Although Mercer has failed to identify the basis for this claim, the Government assumes it stems from Mercer's alleged intoxication.  An evaluation of a purported waiver of Miranda rights involves a two-step analysis.  First, the Court must determine whether the waiver was a product of "a free and deliberate choice rather than intimidation, coercion or deception."  Moran v. Burbine, 475 U.S. 412, 421 (1986).  Second, the Court must determine whether the waiver was made "with a

full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Id. In making these determinations, the Court should review the totality of the circumstances surrounding the interrogation, including the background, experience, and conduct of the suspect. See Moran, 475 U.S. at 421; Oregon v. Bradshaw, 462 U.S. 1039, 1046 (1983). Intoxication does not *per se* invalidate a defendant's Miranda waiver and the voluntary nature of the statements. See United States v. Casal, 915 F.2d 1225, 1229 (8th Cir. 1990). Rather, the test is whether these conditions caused a mental impairment that in turn caused the defendant's will to be overborne. See Casal, 915 F.2d at 1229. In other words:

> This determination is essentially one of fact: whether, under the totality of the circumstances, the defendant was too sleepy, too high on crack cocaine, and in too much pain to be mentally capable of executing a knowing an intelligent waiver of his Miranda rights.

United States v. Brooks, 125 F.3d 484, 491 (7th Cir. 1997); see also United States v. Harris, 44 F.3d 1206 (3d Cir. 1995) (upholding validity of waiver where defendant sounded "calm and rational" despite claiming intoxication at time of statement); United States v. Prince, 157 F. Supp.2d 316, 326 (D. Del. 2001) (totality of circumstances considered to determine if statements made while allegedly intoxicated admissible).

With regard to this claim, the Government expects that evidence will support the following findings and conclusions: First, there is some evidence that Mercer appeared intoxicated at the time he made his initial statement to the officer at the scene. However, the level of intoxication he exhibited did not have a sufficient effect on his frame of mind so as to undermine the validity of his oral Miranda waiver or the voluntary nature of his statements. Second, more than three hours after registering a blood alcohol content of .14% (and four hours after his initial statement), Mercer again waived his Miranda rights and gave an almost identical

statement to the police. Testimony of the officer present at the interview and the audio tape of that interview will show that at the time of the second statement, Mercer was no longer intoxicated and capable of making a knowing and voluntary waiver of those rights. Therefore, defendant's motion lacks merit and Mercer's statements are also admissible.

### III.    CONCLUSION

WHEREFORE, for the reasons set forth above, the United States respectfully requests that the Court deny defendant's Motion to Suppress Evidence and Statements.

Respectfully submitted,<br>
COLM F. CONNOLLY<br>
United States Attorney

BY:    /s/ Lesley F. Wolf
       Douglas E. McCann
       Lesley F. Wolf
       Assistant United States Attorneys

Dated: August 17, 2007