**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Criminal Action No. 07-46-SLR |
| | ) | |
| CHAD MERCER | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S POST-HEARING BRIEF IN OPPOSITION TO DEFENDANT'S
MOTION TO SUPPRESS EVIDENCE AND STATEMENTS**

Defendant Chad Mercer has filed a Motion to Suppress Evidence and Statements (D.I. 12), seeking to exclude all evidence seized from the defendant, including all statements made to law enforcement officers on or around February 21, 2007.[1] On August 22, 2007, the Court held an evidentiary hearing during which a single witness, Officer Dale Lagace of the New Castle County Police Department, testified. The facts as set forth by Officer Lagace's testimony and the applicable principles of law establish that the seizure of evidence from and the statements made by Mercer are admissible.[2] For that reason and the reasons set forth below, the government respectfully requests that the Court deny defendant's motion.

---

[1] Defendant's motion identifies the date of relevant events as March 21, 2007. This appears, however, to be a simple typographical error and there is no dispute that the events at issue took place on February 21, 2007.

[2] In the motion papers filed with the Court, defendant contested the admissibility of all statements made on February 21, 2007, on the basis of <u>Miranda</u> and voluntariness. However, at the hearing, defendant conceded that he was not challenging a second statement, made at approximately 6:00 A.M., on this basis, and challenges it only in so far as it was the product of an illegal arrest.

I.      **FACTUAL BACKGROUND**

At approximately 2:00 A.M. on February 21, 2007, Officer Lagace was in the area near Brookside Boulevard investigating a domestic argument at a residence on Metten Road, Brookside, in Newark. In the course of his investigation, Officer Lagace learned that the complainant's ex-boyfriend had fled the scene in her vehicle, without her authorization. While parked in front of the residence completing his report, Officer Lagace looked up and observed approximately 40-50 yards in front of him, at the intersection of Metten Road and Mercer Drive, a "vehicle speeding by very quickly on Mercer Drive towards Marrows Road." (Tr., 4.)[3] Believing that this vehicle might be the subject of his investigation and seeing that the vehicle was traveling at least twice the speed limit, Officer Lagace followed the vehicle. (Tr., 5.) As Officer Lagace approached the vehicle from behind on Brookside Boulevard, he observed two men in the vehicle and "unusual" movement by the driver and passenger. (Tr., 6.) Although Officer Lagace had determined that the vehicle he was following was not involved in the domestic dispute, he activated his vehicle's emergency equipment, signaling the vehicle to stop because he "had observed the vehicle traveling at what appeared to be a high rate of speed in a residential area and in the darkness of night, which was dangerous to me, and a violation of Delaware Code, Title 21, 4161– [correcting self to 4168(a)] 68(a), unreasonable speed." (Tr., 7.)

Although the vehicle slowed down, it initially did not come to a complete stop, instead slowing behind a parked vehicle, pulling out again into the travel lane, around this parked vehicle, and then stopped in front of the parked car. As soon as the vehicle stopped, the

---

[3]All references to (Tr., X) refer to the transcript of the evidentiary hearing held on August 22, 2007.

passenger, identified at the evidentiary hearing by Officer Lagace as Chad Mercer, jumped from the car and into the front yard of a residence on Brookside Boulevard. Officer Lagace pursued defendant and gave him repeat orders to stop, but Mercer continued to run. (Tr. 8.) As Officer Lagace continued his pursuit, defendant yelled, "I have warrants, I have warrants." As the men approached the back fence of the Brookside Boulevard residence, Mercer turned to face Officer Lagace, who attempted to use his Taser. The Taser, however, malfunctioned and Mercer ran up onto the front porch of the Brookside Boulevard residence. Officer Lagace followed and grabbed a hold of defendant. Mercer continued to struggle, but in the area just in front of the porch, Officer Lagace was able to "take him down." With the assistance of a second officer, defendant was successfully handcuffed and placed under arrest (Tr. 11-12.) Officer Lagace then returned to the porch of the Brookside Boulevard residence to retrieve his Taser and while there observed a revolver on the porch in the position where Mercer had been standing at the point the officer first "put physical hands" on him. (Tr. 14-15.)

At the scene, Officer Lagace orally advised Mercer of his Miranda rights at which time Mercer stated he was aware of those rights and agreed to speak with him about the incident. (Tr. 15-18.) Defendant stated that while intoxicated, he had been walking along Marrows Road when a man, who he knows only as "Black," stopped and offered him a ride and they drove around the Brookside Park area. (T. 18.) When the police officer attempted to pull them over, Black threw a gun at him and told him to run or else he would "pop" him. Mercer also stated that he ran because he had a warrant. (Tr. 21.) Officer Lagace testified that he noticed an odor of alcohol and that Mercer had "bloodshot and glassy eyes" at the time of the interview. He also testified that defendant appeared to understand his questions and responded appropriately and coherently.

(Tr. 21-22.) Mercer was then transported back to New Castle County Police Headquarters where a Breathalyzer test performed on Mercer yielded a .14% blood alcohol level. (Tr. 23.)

## II.      ARGUMENT

### A.      The Vehicle Stop and Pursuit of Mercer Were Lawful and Justified.

The Motion to Suppress challenges the validity of the vehicle stop and subsequent pursuit of Mercer on the grounds that there was no reasonable suspicion for those actions. Defendant argues that if, in fact, the vehicle stop and pursuit were unlawful, then so too would be Mercer's capture and accordingly any evidence discovered or statements made by defendant would be inadmissible.

"[U]nreasonable searches and seizures" are prohibited by the Fourth Amendment. U.S. Const. amend IV. However, a police officer may lawfully stop a vehicle where the vehicle has committed a traffic violation and exercise reasonable control over the car and its passengers. See Pennsylvania v. Mimms, 434 U.S. 106, 109 (1977). Further, an officer may also conduct a brief investigatory stop based upon reasonable suspicion. See Terry v. Ohio, 392 U.S. 1 (1968). In order to determine whether such a stop was justified, a court must consider the "totality of the circumstances surrounding the stop." United States v. Bonner, 363 F.3d 213, 217 (3d Cir. 2004) citing United States v. Sokolow, 490 U.S. 1, 7 (1989). Here, the evidence demonstrates ample grounds for stopping the vehicle and pursuing Mercer as he fled from it.

#### 1.      Officer Lagace had probable cause to stop the vehicle for speeding.

Observation of speeding, or commission of another traffic violation, gives rise to probable cause to stop that vehicle. See Mimms, 434 U.S. at 109; Bonner, 363 F.3d at 216.

Delaware law imposes both general speed restrictions and specific speed limits. Where no special dangers or conditions exist, and the speed limit is not otherwise posted, in residential districts, the speed limit is twenty-five (25) miles per hour. Del. Code Ann. tit. 21 § 4169(a)(2).[4] "[A]ny speed in excess of such limits shall be absolute evidence that the speed is not reasonable or prudent and that it is unlawful." Del. Code Ann. tit. 21 § 4169(a). Further restrictions state, in relevant part, that "[n]o person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and without having regard to the actual and potential hazards then existing." Del. Code Ann. tit. 21 § 4168(a).[5] Delaware law does not provide a specific set of requirements or mandate a period of observation that gives rise to probable cause for determining that such a violation has occurred, but instead considers the evidence and circumstances as they existed at the time of the stop. "To establish probable cause, the police are only required to present facts which suggest, when *those facts* are viewed under the totality of the circumstances, that there is a fair probability that the defendant committed a crime." State v. Maxwell, 624 A.2d 926, 930 (Del. 1993) (reversing lower court ruling that no probable cause existed because officers failed to rule out innocent explanations for observations prior to making stop).

Here the totality of the circumstances support the finding that Officer Lagace has probable cause to stop the vehicle for a speeding violation. Office Lagace credibly testified that

---

[4]At the evidentiary hearing Officer Lagace testified that this limit was 20 miles per hour. (Tr. 5.)

[5]Highway is defined in relevant part as the "entire width between boundary lines of every way or place of whatever nature open to the use of the public as a matter of right for purposes of vehicular travel." Del. Code Ann. tit. 21 § 101(22).

he was sitting in his patrol car at approximately 2:00 A.M., on Metten Road and Mercer Drive, approximately forty (40) yards from the intersection of Metten with and Mercer Drive, when he noticed a vehicle on Mercer "speeding by very quickly." (Tr., 4.) He estimated that the vehicle was traveling at approximately forty (40) miles per hour, in a residential community late at night, an unreasonable speed. (Tr., 5.) Although Officer Lagace observed the vehicle only for a "split second," it is precisely because he only saw the vehicle for an instant that he was able to determine that it was speeding. (Tr., 33.) Had the vehicle been traveling at an appropriate speed, Officer Lagace would have had a longer period of time to observe the vehicle. As someone with significant experience in observing and issuing citations for traffic violations (Tr., 5), given the totality of the circumstances Officer Lagace was able to reasonably conclude that the vehicle was traveling at an unreasonable speed. See Maxwell, 624 A.2d at 930.

### 2.    Officer Lagace was justified in chasing and seizing Mercer.

Mercer's motion also challenges Officer Lagace's pursuit of him upon his exit from the vehicle. However, controlling precedent squarely addresses and defeats this challenge. See generally Bonner, 363 F.3d 213. Because Officer Lagace had probable cause to stop the vehicle due to the traffic violation, he also had the authority to "exercise reasonable superintendence over the car and its passengers." Id. at 216. Mercer's flight from the traffic stop justified both his pursuit and eventual capture. In the presence of reasonable suspicion, an officer may lawfully conduct a brief, investigatory stop. See Terry, 392 U.S. 1. The totality of the circumstances dictate whether justification exists for a stop. See Sokolow, 490 U.S. at 8. "[D]eference is given to an officer's conclusions based upon the officer's experience." United States v. McCray, 148 F. Supp.2d 379, 386 (D. Del. 2001). Although flight from an officer, in

and of itself, is insufficient to give rise to reasonable suspicion, flight in the presence of other "plus factors," does give rise to reasonable suspicion. Illinois v. Wardlow, 528 U.S. 119, 125-26 (2000).

In Bonner, the Third Circuit considered facts closely analogous to the instant ones. Bonner was a passenger in a vehicle pulled over by police in the course of a lawful traffic stop. Before the officers had any opportunity to provide instruction or state the purpose of the stop, Bonner fled from the vehicle and continued to run, like Mercer (Tr. 8), despite repeat orders to stop. Again like Mercer, Bonner did not stop until he was tackled by police officers. (Tr. 11-12.) Upon controlling Bonner, the police officers discovered crack cocaine in his possession. Bonner moved to suppress the evidence on the basis that the officers lacked reasonable suspicion for their pursuit and stop and the district court granted his motion. The Third Circuit, however, reversed and held that, "[f]light from a non-consensual, legitimate traffic stop (in which officers are authorized to exert superintendence and control over the occupants of the car) gives rise to reasonable suspicion." Bonner, 363 F.3d at 218. Just as the Bonner court determined that the officer had reasonable suspicion to pursue and stop Bonner, so too did Officer Lagace have reasonable suspicion to stop Mercer— on the basis of his flight from a legitimate traffic stop.

Moreover, Mercer's conduct during the chase, further supported the basis for stopping him. As Officer Lagace testified, while Mercer was running from him and before he first made physical contact with him, defendant shouted at several points, "I have warrants, I have warrants." (Tr. 11.) It is axiomatic that a statement admitting illegal activity or commission of a crime gives rise to sufficient cause to, at very least, conduct an investigatory stop. See e.g., Awalt v. United States, 47 F.2d 477 (3d Cir. 1931) (captain's statement that ship was carrying

7

"booze" during Prohibition provided probable cause for warrantless search of ship); <u>United States v. Hanton</u>, 418 F. Supp.2d 757, 763 (W.D. Pa. 2006) (defendant's admission that he had just smoked marijuana sufficient probable cause for arrest).  Because Mercer's statement that he had warrants constitutes evidence that he had, at the time of pursuit, criminal culpability, Officer Lagace was justified in his continued pursuit and seizure of Mercer, which led to the eventual discovery of the firearm and provision of statements to the police.

The uncontested evidence presented to the Court demonstrates the legitimacy of the initial traffic stop and subsequent pursuit and seizure of the defendant.  Office Lagace, a patrol officer experienced with observing and issuing citations for traffic violations, observed a vehicle moving at a "very apparent high rate of speed," (Tr. 4), late at night, across an intersection in a residential neighborhood.  This observation provided probable cause for a traffic stop.  <u>Mimms</u>, 434 U.S. at 109.  Although he only saw the vehicle for a "split second," it was precisely because of the excessive speed of the vehicle that his opportunity for observation was so short.  (Tr. 33.)  As Officer Lagace attempted to stop the vehicle in connection with the traffic violation, Mercer fled from the vehicle.  (Tr. 8.)  In the circumstances, Mercer's flight from the legitimate traffic stop gave rise to reasonable suspicion, justifying Officer Lagace's pursuit of Mercer.  <u>Bonner</u>, 363 F.3d at 218.  Moreover, Mercer's own admission, during flight that he "had warrants," provided further justification for the pursuit and seizure.  Accordingly, there is no basis for the suppression of any evidence seized or statements made in connection with defendant's arrest and his motion to suppress any such evidence should be denied.

**B.      Mercer's Waiver of His Miranda Rights Was Knowing and Voluntary**

Mercer also seeks to suppress the statement he made to Officer Lagace immediately subsequent to his arrest on the basis that his Miranda waiver was invalid and his statements involuntary, due to the alleged level of his intoxication.  The evidence presented demonstrates that while Mercer had been drinking and displayed some signs of intoxication he was still capable of making a knowing and voluntary waiver of his Miranda rights.   In considering Mercer's claim, the Court must first determine whether the waiver was a product of "a free and deliberate choice rather than intimidation, coercion or deception."  Moran v. Burbine, 475 U.S. 412, 421 (1986).  Second, the Court must determine whether the waiver was made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."  Id.  In making these determinations, the Court should review the totality of the circumstances surrounding the interrogation, including the background, experience, and conduct of the suspect.  See id.; Oregon v. Bradshaw, 462 U.S. 1039, 1046 (1983).  Intoxication does not *per se* invalidate a defendant's Miranda waiver and the voluntary nature of the statements.  See United States v. Casal, 915 F.2d 1225, 1229 (8th Cir. 1990).  Rather, the test is whether these conditions caused a mental impairment that in turn caused the defendant's will to be overborne. See Casal, 915 F.2d at 1229.  In other words:

> This determination is essentially one of fact: whether, under the totality of the circumstances, the defendant was too sleepy, too high on crack cocaine, and in too much pain to be mentally capable of executing a knowing an intelligent waiver of his Miranda rights.

United States v. Brooks, 125 F.3d 484, 491 (7th Cir. 1997); see also United States v. Harris, 44 F.3d 1206 (3d Cir. 1995) (upholding validity of waiver where defendant sounded "calm and rational" despite claiming intoxication at time of statement); United States v. Prince, 157 F.

9

Supp.2d 316, 326 (D. Del. 2001) (totality of circumstances considered to determine if statements made while allegedly intoxicated admissible).

It is not contested that at the scene of the arrest Officer Lagace advised Mercer of his Miranda rights, pursuant to a card he carries with him precisely for that purpose. (Tr. 16-18.) Nor does it appear to be contested that Mercer expressly acknowledged that he both understood and waived those rights. (Tr. 17-18.) Similarly, it does not appear to be defendant's position that his waiver is invalid as the product of "intimidation, coercion, or deception," thus completing the first prong of the analysis. Moran, 475 U.S. at 421. In challenging the admissibility of the statement, Mercer claims that because he was intoxicated, he lacked the necessary awareness to comprehend "the nature of the right being abandoned and the consequences of [his] decision to abandon it." Id.

There is no *per se* rule that Miranda waivers by intoxicated individuals are invalid, but the totality of the circumstances must be evaluated. See Casal, 915 F.2d at 1229. Here, the evidence shows that while Mercer displayed some outward signs of intoxication he was capable of, and indeed did, make a legitimate waiver of his Miranda rights. Officer Lagace testified that during the course of his initial ten-minute interview of the defendant (there is a subsequent interview which Mercer is not contesting based on Miranda issues), that he noticed an odor of alcohol on Mercer's breath and that he had bloodshot and glassy eyes. (Tr. 21.) However, Officer Lagace also testified that Mercer was capable of providing basic pedigree information "without hesitation," and was capable of conversing easily and answering appropriately the questions put to him by Officer Lagace. (Tr. 22.) In Officer Lagace's opinion, based on his professional experience in talking to intoxicated individuals, defendant was intoxicated "but still

able to interact." (Tr. 23.) A breathalyzer test performed after the interview confirmed that Mercer had been drinking, as he registered a blood alcohol level of .14%. (Tr. 23.) However, the totality of circumstances demonstrate that Mercer was sufficiently coherent to understand the import and consequences of his Miranda waiver, and thus the Court should not suppress his statement to Officer Lagace at the scene of his arrest. See, e.g., United States v. Turner, 157 F.3d 552, 555-56 (8th Cir. 1998) (Miranda waiver valid even where defendant high on PCP at time waiver made because evidence showed he understood rights and knowingly waived them); United States v. Smokey, 81 F.3d 171 (9th Cir. 1996) (statement admissible where defendant presented no evidence that intoxication affected "cognitive and physical abilities" and agents testified defendant appeared to understand waiver of rights); United States v. Andrews, 22 F.3d 1328, 1340 (5th Cir. 1994) (upholding Miranda waiver where agent testified that although it appeared defendant had been drinking he seemed "reasonable").

## III.  CONCLUSION

WHEREFORE, for the reasons set forth above, the United States respectfully requests that the Court deny defendant's Motion to Suppress Evidence and Statements.

>                     Respectfully submitted,
>
>                     COLM F. CONNOLLY
>                     United States Attorney
>
> BY:   /s/ Lesley F. Wolf
>                     Douglas E. McCann
>                     Lesley F. Wolf
>                     Assistant United States Attorneys

Dated: September 12, 2007

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>CHAD MERCER )<br>)<br>Defendant. ) | Criminal Action No. 07-46-SLR |

## **ORDER**

AND NOW, this _____ day of _____, 2007, upon consideration of Defendant's Motion to Suppress Evidence and Statements (Doc. No. 12), and the Government's response thereto, it is hereby ORDERED that defendant's motion is DENIED.

By the Court:

_____

Hon. Sue L. Robinson
Judge, United States District Court