IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Criminal Action No. 07-46-SLR |
| | : | |
| CHAD MERCER, | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO SUPPRESS PHYSICAL EVIDENCE AND STATEMENTS**

Defendant, Chad Mercer, by and through his undersigned counsel, Eleni Kousoulis, Assistant Federal Public Defender for the District of Delaware, respectfully submits this Memorandum of Law in support of his Motion to Suppress Physical Evidence and Statements. For the reasons set forth below, Mr. Mercer seeks to exclude the Government's admission, at trial, any and all evidence that was obtained after Mr. Mercer's illegal seizure on February 21, 2007, and all statements obtained in violation of his Fifth Amendment rights and in violation of <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

**I. <u>INTRODUCTION</u>**

On , April 3, 2007, Mr. Mercer was indicted for being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). On July 9, 2007, Mr. Mercer filed a Motion to Suppress Physical Evidence and Statements. The grounds for Mr. Mercer's motion related to a traffic stop of a vehicle in which Mr. Mercer was a passenger, and the subsequent seizure and illegal search of his person, on or about February 21, 2007, and alleged statements that he made at the scene

following his arrest. On August 22, 2007, this Court conducted an evidentiary hearing to determine Mr. Mercer's suppression motion.

Mr. Mercer submits that law enforcement officials lacked probable cause to conduct the traffic stop which led to his arrest, in violation of his Fourth Amendment rights. See United States v. Sharpe, 470 U.S. 675 (1985). Mr. Mercer further submits that, even if the Court determines that law enforcement officials had probable cause to stop the vehicle, the officer lacked reasonable suspicion to seize Mr. Mercer. Thus, any evidence derived from this illegal search and seizure must be suppressed as "fruit of the poisonous tree." Wong-Sun v. United States, 371 U.S. 471 (1963).

Additionally, Mr. Mercer submits that his statements at the scene immediately following his arrest were obtained in violation of his Fifth Amendment rights and in violation of Miranda v. Arizona, 384 U.S. 436 (1966). Thus, Mr. Mercer's statements must be suppressed and excluded at trial.

## II. FACTUAL BACKGROUND

### A. August 22, 2007 Evidentiary Hearing

On August 22, 2007, the Court held an evidentiary hearing on Mr. Mercer's suppression motion. At the hearing, the Government presented only one witness, Officer Dale A. Lagace of the New Castle County Police Department.

#### 1. Officer Lagace's Testimony

Officer Lagace testified regarding the traffic stop of the vehicle in which Mr. Mercer was the passenger, his interaction with Mr. Mercer, and the statements elicited from Mr. Mercer at the scene following his arrest. Specifically, Officer Lagace testified that on February 21, 2007, at

2

approximately 2:00 a.m., he was conducting an investigation of a domestic argument near Brookside Boulevard in Newark, Delaware. (Tr. 3-4)[1]. While he was sitting in his car in front of 12 Metten Road completing his report on the domestic incident, Officer Lagace observed a vehicle traveling on Mercer Drive heading towards Marrows Road. (Tr. 26, 29). Officer Lagace saw this vehicle for only a "split second" as it was crossing over Metten Road. (Tr. 33). Officer Lagace testified that it was dark outside and that there are no street lights in the area of Metten and Mercer. (Tr. 35). Despite only observing the car for a split second, Officer Lagace decided to conduct a traffic stop of the vehicle. (Tr. 8). When Officer Lagace got behind the car, the car was going the posted speed limit. (Tr. 34). However, Officer Lagace decided to stop the car for a speeding violation, and he activated his emergency lights in order to stop the car. (Tr. 37). The only reason Officer Lagace stopped the car was for speeding. (Tr. 37). At the hearing, Officer Lagace testified that he observed movement inside the car from both the driver and the passenger prior to the car stopping. (Tr. 36). However, in his written report of this case, Officer Lagace made no mention of Mr. Mercer moving around in the vehicle prior to the car stopping. (Tr. 37-38). Officer Lagace testified that he always includes all of the important facts of a case in his incident report and that nowhere in his report of this incident did he write that he ever saw Mr. Mercer, who was the passenger, moving around. (Tr. 37-38). In his incident report, Officer Lagace had written that he had observed only the driver of the car moving around inside the car. (Tr. 36-37, 38).

    Officer Lagace testified that after the car stopped, the passenger in the car, who was Mr. Mercer, jumped out of the car and started to run. (Tr. 38). Despite the fact that it was the driver

---

[1] "(Tr. ___ )" refers to the transcript of the evidentiary hearing held in this matter on August 22, 2007.

who had committed the alleged traffic violation and it was only the driver who Officer Lagace noted in his report was moving around inside the car, Officer Lagace made the decision to get out of his car and chase Mr. Mercer. (Tr. 38). Meanwhile, the driver of the car took off in the car. (Tr. 38).

As Officer Lagace was chasing Mr. Mercer, Officer Lagace never saw Mr. Mercer with any kind of firearm. (Tr. 41-42). Officer Lagace never saw Mr. Mercer with a gun in his hands. (Tr. 42). Officer Lagace never saw Mr. Mercer discard a gun. (Tr. 42). In fact, as he was chasing Mr. Mercer, Officer Lagace testified that Mr. Mercer was using his hands to hold up his pants. (Tr. 42). As Officer Lagace was chasing Mr. Mercer, Officer Lagace took out his conducted energy weapon and attempted to use it on Mr. Mercer. (Tr. 8, 11). Officer Lagace continued to pursue Mr. Mercer onto the front porch of 135 Brookside Boulevard. (Tr. 11-12). Although at the hearing Officer Legace testified that Mr. Mercer was yelling he had warrants as he was being pursued by Officer Lagace, Officer Lagace admitted that in his police report on this incident, the first time he notes that Mr. Mercer yelled he had warrants, was not until after he had been apprehended by Officer Lagace on the porch. (Tr. 41). Officer Lagace testified that it was less than 10 seconds from the time Mr. Mercer exited the vehicle to the time he was seized by Officer Lagace. (Tr. 42-43).

As they got on the porch, Officer Lagace physically grabbed hold of Mr. Mercer and forced him down to the ground. (Tr. 12, 45). With the assistance of other officers, Mr. Mercer was placed in handcuffs and taken into custody. (Tr. 12). After placing Mr. Mercer into the patrol vehicle, Officer Lagace returned to the porch to recover his conducted energy weapon, at which point he observed, for the first time, a firearm on the porch. (Tr. 14-15, 45-46).

At the scene, after Mr. Mercer had been placed in the patrol vehicle, Office Lagace began questioning Mr. Mercer after orally advising him of his Miranda rights. (Tr. 16). In response to

4

Officer Lagace's questions, Mr. Mercer gave a statement. (Tr. 18, 21). Mr. Mercer was interviewed at the scene for approximately 10 minutes. (Tr. 19). Officer Lagace testified that Mr. Mercer appeared intoxicated at the time of this interview. Officer Lagace testified that Mr. Mercer had an odor of alcohol on his breath, bloodshot and glassy eyes, and slurred speech. (Tr. 21, 46, 47). As he was being placed into the police car, Mr. Mercer told Officer Lagace that he was intoxicated. (Tr. 46). A breathalyser administered to Mr. Mercer at the police station 45 minutes after his arrest registered 0.14 percent. (Tr. 23, 47).

### III. ARGUMENT

#### A. Mr. Mercer's Seizure Violated The Fourth Amendment.

The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." See U.S. CONST. Amend. IV. The United States Supreme Court noted that "[n]o right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." Terry v. Ohio, 392 U.S. 1, 9 (1968) (citing Union Pacific R.R. Co. v. Botsford, 141 U.S. 250, 251 (1891).

The Fourth Amendment permits officers to conduct a brief, investigatory stop if the officer has reasonable suspicion that "criminal activity may be afoot." Terry, 392 U.S. at 30. "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief and limited purpose, constitutes a 'seizure of persons' within the meaning of this provision." Whren v. United States, 517 U.S. 806, 809 (1996). See also Brendlin v. California, 127 S.Ct. 2400, 2403

(2007) (holding that when a police officer makes a traffic stop, the passenger, in addition to the driver, is seized and may challenge the constitutionality of a traffic stop); United States v. Mosley, 454 F.3d 249 (3d Cir. 2006) ("[A] traffic stop is a seizure of everyone in the stopped vehicle.").

In "justifying the particular intrusion, the police officer must be able to point to specific and articulable facts which, taken together with reasonable inferences from those facts, reasonably warrant that intrusion." Terry, 392 U.S. at 21 (stating that this "demand for specificity in the information upon which police action is predicated is the central teaching of this Court's Fourth Amendment jurisprudence"). See also Whren, 517 U.S. at 810 (stating that an automobile stop is subject "to the constitutional imperative that it not be 'unreasonable' under the circumstances."; United States v. Delfin-Colfina, 464 F.3d 392 (3d Cir. 2006) (stating that a traffic stop will be deemed a reasonable seizure if the police possessed, specific, articulable facts that the individual violated a traffic law at the time of the stop).

In the present case, Officer Lagace lacked probable cause, and specific, articulable facts to conduct the traffic stop of the vehicle in which Mr. Mercer was a passenger. Furthermore, there was no reasonable suspicion to establish that Mr. Mercer was involved in any criminal activity which would justify his seizure following the traffic stop.

### 1. Officer Lagace Lacked Probable Cause to Stop the Vehicle.

Probable cause must exist in order to justify a traffic stop of a motor vehicle because the stop of a motor vehicle constitutes a seizure within the meaning of the Fourth Amendment. See Whren, 517 U.S. at 809-810. In its Post-Hearing Brief, the government argues that Officer Lagace had probable cause to stop the vehicle for a speeding violation. Govt. Brief at 5. However, the totality of the circumstances in the present case does not support such a conclusion. Officer Lagace saw the

6

car in which Mr. Mercer was a passenger for only a split second. (Tr. 33). That is insufficient time to conclude that a car is speeding to justify a traffic stop, especially when viewed together with the conditions under which Officer Lagace made his initial observation of this vehicle. Officer Lagace was distracted at the time he first observed Mr. Mercer's vehicle. He was sitting in his patrol car, looking down (not out his window at the intersection), filling out a report. Furthermore, it was dark outside and there were no street lights. Officer Lagace would have had to have his interior car light on in order to see inside his vehicle to complete his report, which would have further compromised his ability to see out into the street ahead of him. Having an interior car light on inside a vehicle when it is dark outside makes it more difficult to see outside the car. When factoring all of this together, under the totality of the circumstances, Officer Lagace's split second sighting of Mr. Mercer's car cannot be deemed sufficient time in which to conclude that the car was speeding and could not have established probable cause to justify a traffic stop.

The government argues that "had the car been traveling an appropriate speed, Officer Lagace would have had a longer period of time to observe the vehicle" and "it is precisely because he only saw the vehicle for an instant that he was able to determine that it was speeding." Govt. Brief at 6. However, this is merely supposition on the part of the government. As noted above, Officer Lagace was distracted when he made his initial observations of the vehicle. It's just as likely that the reason he only observed the car for a split second was not because the car was traveling at a high rate of speed, but because at the time he looked up from writing his report, the car was already in the process of traveling out of Officer Lagace's line of vision. It stands to reason that even a car traveling 25 miles per hour doesn't take more than a second or two to travel over a small intersection in a neighborhood, such as the intersection over which the car traveled in this case.

7

The only factor to which the government points to support the stop of the car is Officer Lagace's split second sighting of the vehicle. Given the totality of the circumstances and the conditions under which Officer Lagace was making his observations, a split second is simply not enough time to establish probable cause of a speeding violation justifying a stop. Thus, the traffic stop was unreasonable under the circumstances, and any evidence subsequently obtained must be suppressed as "fruit of the poisonous tree." Wong-Sun v. United States, 371 U.S. 407, 484-485; see also Whren.[2]

### 2. Officer Lagace Lacked Reasonable Suspicion to Seize Mr. Mercer Following the Traffic Stop.

Even if the Court determines that the initial traffic stop of Mr. Mercer's vehicle was supported by probable cause, Officer Lagace lacked reasonable suspicion to pursue or seize Mr. Mercer following the stop. Absent probable cause, an individual's detention must be supported by a "reasonable, articulable suspicion that criminal activity is afoot". Illinois v. Wardlow, 528 U.S. 119, 123 (2000). The U.S. Supreme Court in Pennsylvania v. Mimms, 434 U.S. 106 (1977), held that during a valid traffic stop, safety concerns permit an officer to order the driver out of the car, even absent any suspicion of illegal activity. Id. at 112. In Maryland v. Wilson, 519 U.S. 408 (1997), the

---

[2] Mr. Mercer further notes that, although Officer Lagace testified that the movement of the occupants of the car made him believe something was going on, the officer testified that he wrote nothing in his incident report regarding Mr. Mercer moving around in the vehicle prior to the stop, and Officer Lagace did not articulate any facts to support a reasonable suspicion that Mr. Mercer was involved in any criminal activity. See Terry. Furthermore, Officer Lagace testified that the only reason he decided to conduct a traffic stop was for the alleged speeding violation. Tr. at 37. Courts have recognized that "even when law enforcement officers have no basis for suspecting a particular individual, they may pose questions [or] ask for identification." United States v. Lockett, 406 F.3d 207 (3d Cir. 2005) (citing Florida v. Bostick, 501 U.S. 429 (1991)). The right to unsupported inquiry, however, is limited by the consensual nature of the encounter, and an individual is free to end such an encounter or to not respond. Bostick, 501 U.S. at 434-35.

U.S. Supreme Court extended the rule of Mimms to include passengers of lawfully stopped vehicles. Id. at 414. In both cases, the Supreme Court reasoned that safety concerns to the officer justified the seizure, reasoning that any danger posed to officers could be reduced with only minimal additional intrusion by allowing officers to control the situation in ordering the driver and passengers out of lawfully stopped vehicles. Id. However, in the present case, Mr. Mercer, who at the time ran from the car had done nothing illegal, decided to leave the scene. Officer Lagace provided no explanation in his testimony as to how Mr. Mercer leaving the scene would create any danger to the officer.

Applying this standard to the circumstances in this case, Officer Lagace lacked reasonable suspicion to seize Mr. Mercer following the traffic stop. Officer Lagace had no specific, articulable facts indicating that Mr. Mercer was involved in any illegal criminal activity, or that Mr. Mercer posed any danger to him.

The government relies on United States v. Bonner, 363 F.3d 213 (3d Cir. 2004), in support of its argument that Officer Lagace had reasonable suspicion to seize Mr. Mercer. However, as concluded by Judge McKee in his dissent in Bonner, the majority's analysis in Bonner appears inconsistent with Supreme Court precedent, as reflected in Terry v. Ohio, 392 U.S. 1 (1968), and Illinois v. Wardlow, 528 U.S. 119 (2000).[3] Id. at 220. As stated by Judge McKee in his dissent, "Terry does not authorize police to chase, tackle and handcuff one who runs away from them based

---

[3] Furthermore, although the majority in Bonner held that flight from a non-consensual, legitimate traffic stop can give rise to reasonable suspicion justifying a Terry stop, because "[t]he Supreme Court has never addressed the question of whether, during a lawful traffic stop, the police could detain passengers for the entire duration of the stop", Bonner at 271, FN1, raises this argument here in order to preserve it.

9

solely on the basis of flight." <u>Bonner</u>, 363 F.3d at 225.[4]  That's exactly what Officer Lagace did in the present case.  Thus, since Officer Lagace lacked reasonable suspicion to pursue or seize Mr. Mercer, any evidence subsequently obtained from the search must be suppressed as "fruit of the poisonous tree."  <u>Wong-Sun v. United States</u>, 371 U.S. 407, 484-485.

**B.    The Statements Elicited from Mr. Mercer Following His Arrest Must Be Suppressed.**

Mr. Mercer also submits that any alleged statements made at the scene immediately following his seizure should be suppressed pursuant to the Fifth Amendment and <u>Miranda v. Arizona</u>, 384 U.S. 436, 444 (1966) (stating that a suspect subjected to custodial interrogation must be advised of his rights prior to making a statement and make a knowing, voluntary waiver of those rights).[5]  The government bears the burden of showing by a preponderance of the evidence that any statements made to law enforcement were voluntary.  <u>See</u> <u>Lego v. Twomey</u>, 404 U.S. 477, 489 (1972).  "For

---

[4]The government argues that in addition to his flight, Mr. Mercer was also yelling "I have warrants" as he was running from the vehicle.  Govt. Brief at 7.  However, as brought out at the evidentiary hearing in this case, in his police report of this incident, Officer Lagace makes no mention of Mr. Mercer stating that he had warrants until after he was apprehended by Officer Lagace.  Furthermore, as testified to by Officer Lagace at the hearing, his entire chase of Mr. Mercer lasted less than 10 seconds.  Tr. 42-43.  It makes no sense that Mr. Mercer in this very brief time would begin yelling "I have warrants" as soon as he exited the car as he is running away from Officer Lagace.  What makes more sense is that after apprehended by Officer Lagace, Mr. Mercer offered a reason to Officer Lagace as to why he ran, most likely in response to a question by Officer Lagace as to why he was running.

[5]Mr. Mercer reiterates his position that his statements made at the scene immediately following his seizure as testified to at the evidentiary hearing in this case, as well as the subsequent statement taken from him at the police station at approximately 6:00 a.m., must all be suppressed as fruit of Mr. Mercer's illegal seizure and arrest.  Mr. Mercer's challenge to his statements on the basis of <u>Miranda</u> and voluntariness are only being put forward with regard to the statements made by Mr. Mercer at the scene following his seizure, and not to the statement elicited from him later at the police station.

10

a defendant's confession to be voluntary, and thus admissible, the government must prove by a preponderance of the evidence that his will was not overborne and that the confession was the product of a rational intellect." United States v. Arcediano, 371 F.Supp. 457, 466 (D. N.J. 1974) (citing Lego v. Twomey, 404 U.S. 477; Jackson v. Denno, 378 U.S. 368 (1964); Townsend v. Sain, 372 U.S. 293 (1963). "[T]he question in each case is whether the defendant's will was overborne at the time he confessed." Lynumn v. Illinois, 372 U.S. 528 (1963).

The government argues that "it is not contested that at the scene of the arrest Officer Lagace advised Mercer of his Miranda rights...[or] that Mercer expressly acknowledged that he both understood and waived those rights." Govt. Brief at 10. However, as recognized by the Third Circuit in Collins v. Brierly, 492 F.2d 735 (3d Cir. 1974), "[although] in a particular case the recitation of the Miranda rights might be in all respects adequate, a subsequent waiver executed by a mentally incompetent, or semi-comatose, *or intoxicated person* would likely be ineffective and the admission of statements made after such a waiver would violate his constitutional rights. Id. at 742 (citing United States v. Dutkiewicz, 431 F.2d 969 (3d Cir. 1970) (per curiam)) (emphasis added). There is significant evidence that Mr. Mercer was intoxicated at the time of his arrest in this case. Officer Lagace testified that he smelled an odor of alcohol on Mr. Mercer's breath, Mr. Mercer's eyes were glassy and bloodshot, his speech was slurred, and Mr. Mercer told Officer Lagace he was intoxicated. (Tr. 21, 46, 47). Furthermore, a breathalyser administered to Mr. Mercer at the police station, over 45 minutes after his arrest, still registered a BAC of .14 percent. (Tr. 23, 47). It stands to reason that at the time Mr. Mercer is alleged to have waived his Miranda rights, his BAC was more likely even higher.

Although Mr. Mercer is alleged to have waived his Miranda rights, given his state of

11

intoxication, any waiver cannot be said to be knowing and voluntary. It can hardly be said that any waiver made by Mr. Mercer was the product of "rational intellect" if he was as intoxicated as the evidence suggests. Under these circumstances, Mr. Mercer could not have made a voluntary, knowing and intelligent waiver of his Miranda rights. See Rhode Island v. Innis, 446 U.S. at 300-01 (1980) (". . . Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent."). Thus, Mr. Mercer's statements made at the scene must be suppressed.

**IV.  CONCLUSION**

For the reasons set forth, Mr. Mercer submits that any and all evidence that was obtained after his illegal seizure in violation of his Fourth Amendment rights, must be suppressed and excluded at trial. Mr. Mercer further submits that the statements elicited from him at the scene following his arrest, which were obtained in violation of his Fifth Amendment rights and his rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966), must also be suppressed and excluded at trial.

Respectfully submitted,

/s/ Eleni Kousoulis
Eleni Kousoulis, Esquire
Assistant Federal Public Defender
704 King Street, Suite 110
Wilmington, Delaware  19801
ecf_de@msn.com
(302) 573-6010
Attorney for Chad Mercer

Dated: October 1, 2007