IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Crim. No. 07-046-SLR |
| ) | |
| CHAD MERCER, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM ORDER**

**I. INTRODUCTION**

On April 3, 2007, defendant Chad Mercer was indicted by a grand jury for possessing a firearm by a person prohibited in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (D.I. 2) Before the court is defendant's motion to suppress evidence and statements. (D.I. 12) Defendant moves for suppression of evidence and statements based on the following arguments: (1) Officer Dale A. Lagace ("Lagace") lacked probable cause to conduct the traffic stop that led to defendant's arrest, in violation of his Fourth Amendment rights; (2) even if the court determines that there was probable cause to stop the vehicle, Lagace lacked reasonable suspicion to seize defendant and any evidence derived from this illegal search and seizure must be suppressed; and (3) defendant's statements at the scene following his arrest were obtained in violation of his 5th Amendment rights and in violation of Miranda v. Arizona, 384 U.S. 436 (1966).

Plaintiff United States of America has filed opposition, to which defendant filed a reply. (D.I. 16, 19, 20, 21) An evidentiary hearing was held on August 22, 2007, with one law enforcement witness, Lagace, testifying. (D.I. 18) The court has jurisdiction pursuant to 18 U.S.C. § 3231. For the reasons that follow, defendant's motion will be denied in part and granted in part.

## II. FINDINGS OF FACTS

Pursuant to Federal Rules of Criminal Procedure 12(d), the following constitutes the court's essential findings of fact.

1. Lagace has been a patrol officer with New Castle County, Delaware police since November 2002. (D.I. 18 at 3)

2. Prior to his present job, Lagace was a security police officer with the United States Air Force for four years. (Id. at 3) As a security police officer, his duties included observing and issuing citations for speeding. (Id. at 3, 5)

3. On February 21, 2007 at approximately 2:00 a.m., Lagace responded to a domestic incident call at a residence located on Metten Road, Newark, Delaware ('the residence"). (Id. at 3-4) A female at the residence told Lagace that her boyfriend had slapped her and taken her car, a red Mitsubishi, without permission. (Id. at 4, 34)

4. Lagace returned to his patrol vehicle to complete his report on the domestic incident call. His marked vehicle was parked in front of the residence, near the intersection of Metten and Mercer roads, Newark, Delaware. (Id. at 4, 26; DX1) Lagace identified this as a residential area with a speed limit of 20 mph. (Id. at 5) No street lights are located in the area of Metten and Mercer roads. (Id. at 35) On that particular morning, there was snow and ice on the ground. (Id. at 8)

2

5. While completing the report, Lagace looked up and observed, from about 40-50 yards away, a vehicle (silver "Suzuki") traveling on Mercer Drive toward Marrows Road. (Id. at 4, 31, 34) Lagace concluded that the Suzuki was being driven at about twice the speed limit because its headlights passed quickly by his patrol vehicle. (Id. at 5, 33) Lagace also thought that the Suzuki might have been related to the domestic incident call. (Id. at 5) As a result, Lagace pursued the Suzuki and caught up with it on Brookside Boulevard.

6. Following behind the Suzuki, Lagace observed two people in the car: the driver and a front seat passenger. (Id. at 6) Lagace testified that the driver and passenger were moving around suspiciously in the vehicle.[1] (Id. at 7) Lagace noticed that the Suzuki was following another vehicle ("second car"). The second car veered off to another road. Lagace concluded that the second car took this action because his police car was observed.

7. Lagace activated the emergency equipment on his patrol vehicle to pull over the Suzuki for speeding in violation of 21 Del. C. § 4168(a).[2] (Id. at 6-7) The Suzuki pulled over to the right side of the road. (Id. at 8) Before it came to a complete stop,

---

[1] In the police report completed after the events in issue, Lagace noted that only the driver was moving around suspiciously. (Id. at 36-37; DX2)

[2] 21 Del.C. § 4168(a) provides, in part, that "[n]o person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and without having regard to the actual and potential hazards then existing." Further, "where no special dangers or conditions exist, and the speed limit is not otherwise posted, in residential districts, the speed limit is twenty-five (25) miles per hour." 21 Del. C. § 4169(a)(2).

3

however, the Suzuki pulled to the left into the travel lane, drove past a parked car, pulled over and then stopped at the right side curve.

8. As the Suzuki stopped, defendant jumped from the passenger side door and ran onto the front yard of a house.[3] (Id. at 38; GX1, GX2) Defendant did not close the passenger door of the Suzuki; the Suzuki pulled away. (Id. at 50, 38) As defendant ran, Lagace observed him trying to hold up his pants which were falling down around his knees. (Id. at 14)

9. Lagace exited the patrol car and chased after defendant on foot. Lagace repeatedly yelled for defendant to stop and get on the ground. (Id. at 11, 13) Defendant did not comply. Lagace testified that he heard defendant yelling "I have warrants." (Id. at 13, 39)

10. Lagace chased defendant as he ran along the side of a house. Lagace caught up with defendant and engaged him with a conductive energy weapon ("taser"). However, the taser malfunctioned and defendant ran onto the front porch of the house. Lagace applied the taser again without results and realized it was not working. Nevertheless, Lagace wrestled defendant down and attempted to apply handcuffs. Another police officer arrived to assist Lagace and, together, they were able to restrain defendant. (Id. at 12)

11. Lagace took defendant to his patrol vehicle where he was searched and placed under arrest. (Id. at 14) Defendant was placed in the back of the patrol vehicle.

---

[3]Lagace identified this individual as defendant. (Id. at 4)

12. Lagace returned to the porch to retrieve his taser, which he dropped while attempting to restrain defendant. (Id. at 14-15) About two feet away from the taser, Lagace observed a black and wooden-handled revolver. (Id. at 15) The revolver was in the same area where Lagace had first placed his hands on defendant. Lagace collected the revolver as evidence and took digital photographs of the scene.

13. Lagace returned to his patrol vehicle and read defendant his Miranda rights. (Id. at 15-17, GX3) Lagace testified that he read Miranda warnings from a card he carries at all times.[4] (Id. at 17) Lagace testified that defendant answered affirmatively in response to whether he understood the rights read to him. (Id. at 18) Lagace testified that defendant agreed to speak with him and answered affirmatively when asked whether he was willing to voluntarily answer Lagace's questions.

14. Defendant told Lagace he was intoxicated. (Id. at 46) Lagace observed an odor of alcohol on defendant's breath and that his eyes appeared bloodshot and glassy. (Id. at 21) Defendant told Lagace his name, date of birth, address and phone number.

---

[4]Specifically, Lagace testified that he told defendant:
> Miranda Warnings. Number one, you have the right to remain silent.
> Two, if you give up that right to remain silent, anything that you say can be used against you in a court of law.
> Three, you have the right to talk to a lawyer before questioning and to have an attorney with you during questioning.
> Number four, if you cannot afford an attorney, the court will appoint an attorney for you free of charge.
> Five, if you start answering questions, you may stop answering questions at any time.
> Six, do you understand these rights that I have just explained to you?
> Number seven, do you voluntarily waive these rights?
> Number eight, are you willing to voluntarily answer my questions?

(Id. at 17-18)

(Id. at 22) Lagace observed that defendant's speech was slurred. (Id. at 47) Lagace concluded that defendant was intoxicated, but capable of interacting. (Id. at 23) Defendant gave a statement. (Id. at 21) The interview lasted about 10 minutes. (Id. at 19)

15. Lagace transported defendant to New Castle County police headquarters where a breathalyzer test was administered at approximately 2:45 a.m.. (Id. at 23, 47) Defendant's blood alcohol level registered at .14%.[5] (Id. at 23)

16. About 4 hours later at 6:00 a.m., Lagace interviewed defendant again.[6] (Id. at 24-25)

## III. STANDARD OF REVIEW

16. Once a defendant challenges the legality of a warrantless search and seizure, the burden is on the government to demonstrate that the acts were constitutional. United States v. Johnson, 63 F.3d 242, 245 (3d Cir. 1995); United States v. Ritter, 416 F.3d 256, 261 (3d Cir. 2005). The burden of proof is a preponderance of the evidence. United States v. Matlock, 415 U.S. 164, 178 n.14 (1974). The government bears the burden of showing by a preponderance of the evidence that any statements made to law enforcement were voluntary. Lego v. Twomey, 404 U.S. 477, 489 (1972).

---

[5]21 Del. C. § 4177(a) provides, in part, that: "No person shall drive a vehicle [w]hen the person's alcohol concentration is .08 or more."

[6]Defendant does not contest the statement at police headquarters ("second statement") on the basis of voluntariness or Miranda. (Id. at 24-25) Defendant asserts the second statement should be suppressed as fruit of the illegal arrest . (Id. at 25) Defendant challenges the statements made at the scene following his arrest based on intoxication.

6

17. The court is charged with reviewing the "credibility of witnesses and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence." United States v. McKneely, 6 F.3d 1447, 1452-53 (10th Cir. 1993); Government of the Virgin Islands v. Gereau, 502 F.2d 914, 921 (3d Cir. 1974).

## IV. CONCLUSIONS OF LAW

### A. Traffic Stop

18. It is undisputed that a law enforcement officer may lawfully stop a vehicle after observing a violation of state traffic laws. Pennsylvania v. Mimms, 434 U.S. 106, 109 (1977); United States v. Bonner, 363 F.3d 213, 216 (3d Cir. 2004). Reasonable suspicion is required to support an investigatory traffic stop under the Fourth Amendment. United States v. Delfin-Colina, 464 F.3d 392, 396 (3d Cir. 2006) (joining other circuit courts in concluding that "probable cause" not required as predicate for traffic stop).

19. "Because an ordinary traffic stop is analogous to an investigative detention, it has been historically reviewed under the investigatory detention framework first articulated in Terry v. Ohio, 392 U.S. 1 (1968)." Id., 464 F.3d at 396. An officer may conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot. United States v. Valentine, 232 F.3d 350, 353 (3d Cir. 2000) (quoting Illinois v. Wardlow, 528 U.S. 119, 123 (2000)). Reasonable, articulable suspicion is a less demanding standard than probable cause and requires a showing considerably less than a preponderance of the evidence. Wardlow, 528 U.S. at

123. "Though reasonable suspicion is a generally undemanding standard, a police officer does have the initial burden of providing the 'specific, articulably facts' to justify a reasonable suspicion to believe that an individual has violated the traffic laws." Delfin-Colina, 464 F.3d at 397 (quoting United States v. Brignoni-Ponce, 422 U.S. 873, 884 (1975)). The essential issue is not whether a traffic violation actually occurred, rather whether there are facts presented that would lead a reasonable office to believe that a violation may have occurred. See Delfin-Colina, 464 F.3d at 394.

20. To determine whether a stop was justified, the totality of the circumstances surrounding the stop must be evaluated. United States v. Bonner, 363 F.3d 213, 216 (3d Cir. 2004). The court "must view the circumstances surrounding the stop in their entirety, giving due weight to the experience of the officers." United States v. Rickus, 737 F.2d 360, 365 (3d Cir. 1984).

21. The court finds Lagace's manner and demeanor during testimony credible. Lagace's uncontradicted testimony establishes that he observed the Suzuki driving at a high rate of speed at 2:00 a.m. in a residential neighborhood. He provided specific facts demonstrating reasonable suspicion to stop the Suzuki for speeding in violation of 21 Del. C. § 4169(a)(2). Considering Lagace's experience with speeding violations, his brief observation of and conclusion that the Suzuki was speeding in violation of Delaware law was reasonable. United States v. Robertson, 305 F.3d 164, 168 (3d Cir. 2002) (An officer's skill and experience are indispensable to an evaluation of reasonable suspicion). The conflict between the police report and Lagace's testimony is inconsequential since there was reasonable suspicion to stop the Suzuki based on Lagace's observation of a speeding violation.

### B. Flight from lawful traffic stop

22. According to the United States Court of Appeals for the Third Circuit, "flight from a non-consensual, legitimate traffic stop (in which the officers are authorized to exert superintendence and control over the occupants of the car) gives rise to reasonable suspicion" to detain. United States v. Bonner, 363 F.3d at 218. Here, Lagace was effectuating a legitimate traffic stop based on his observation of a speeding violation. Defendant's flight from the Suzuki prevented Lagace from obtaining control over the traffic stop and provided reasonable suspicion for Lagace to pursue and detain defendant.

### C. Statements at the scene following defendant's arrest

23. The Fifth Amendment to the United States Constitution, which applies to the States by way of the Fourteenth Amendment, provides that no person shall be compelled in any criminal case to be a witness against himself. U.S. Const. Amend. V; U.S. Const. Amend. XIV; Malloy v. Hogan, 378 U.S. 1 (1964).

24. In the seminal case, Miranda v. Arizona, 384 U.S. 436, 444-45 (1966), the Supreme Court held that

> the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. . . . As for the procedural safeguards to be employed, unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required. Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently.

25. The examination of whether a defendant has waived effectuation of the Miranda rights has two parts:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.

Moran v. Burbine, 475 U.S. 412, 421 (1986) (internal quotations marks and citations omitted); United States v. Sriyuth, 98 F.3d 739, 749 (3d Cir. 1996) ("This inquiry requires us to consider the totality of the circumstances surrounding the interrogation, which includes examining the events that occurred and the background, experience, and conduct of the defendant. Miranda rights will be deemed waived only when the totality of the circumstances "reveal[s] both an uncoerced choice and the requisite level of comprehension"); see Reiner v. Larkins, 379 F.3d 76 (3d Cir. 2004).

26. Intoxication may invalidate a Miranda waiver. United States v. Turner, 157 F.3d 552, 555 (8th Cir. 1998). "However, the Eighth Circuit has further stated that intoxication will not necessarily or per se invalidate a Miranda warning." United States v. Bailey, 318 F. Supp.2d 839, 843 (D. N.D. 2004). The court must examine the totality of the circumstances. United States v. Prince, 157 F. Supp.2d 316, 326 (D. Del. 2001).

27. The record reflects that Lagace read defendant Miranda warnings and that defendant indicated that he understood his rights before he gave the statement at issue. It is also undisputed that Lagace, an experienced police officer, recognized signs of intoxication (odor of alcohol on defendant's breath; glassy, bloodshot eyes; slurred

speech).  Upon arrival for processing at police headquarters, about 30 minutes after the statement at the scene, a breathalyzer test was administered and registered defendant's blood alcohol content at .14% - well above the level (.08%) prohibited to drive in the State of Delaware.  Lagace did not interview defendant again until four hours later.

    28.  The court credits Lagace's testimony that defendant was able to provide pedigree information and interact at the scene.  There was, however, no detailed evidence presented that demonstrates defendant understood the Miranda rights read to him or the waiver.  Specifically, Lagace testified that defendant answered "yes" to Miranda questions.  There is no indication that Lagace questioned defendant's responses any further.  The court is not suggesting that in every instance a police officer must rigorously discuss Miranda questions or meticulously evaluate responses and waivers before questioning can occur.  On this record, however, where defendant told Lagace he was intoxicated and Lagace recognized obvious signs of intoxication, additional information would have been helpful for the court to determine whether the totality of the circumstances demonstrates a knowing, intelligent and voluntary waiver of Miranda.  Such evidence would also be essential to weigh against the breathalyzer results which confirm defendant's intoxication.  The court concludes that plaintiff has not demonstrated, by a preponderance of the evidence, that defendant (having a blood alcohol content of .14%) made a knowing, voluntary and intelligent waiver of his Miranda rights.  Accordingly, defendant's motion to suppress statements elicited following his arrest is granted.

## V. CONCLUSION

    At Wilmington this   5th   day of December, 2007,

IT IS ORDERED that:

1. The motion to suppress physical evidence and statements obtained after defendant's stop and seizure is denied, the court concluding that the traffic stop and the seizure of defendant were not in violation of defendant's Fourth Amendment rights. (D.I. 12)

2. The motion to suppress statements elicited from defendant at the scene following his arrest is granted, the court concluding that defendant's waiver of <u>Miranda</u> was not voluntary or knowing. (D.I. 12)

3. A telephonic status conference is scheduled for **Wednesday, December 19, 2007** at **9:30 a.m.**, with the court initiating said call.

4. The time between this order and December 19, 2007 shall be excluded under the Speedy Trial Act in the interests of justice. 18 U.S.C. § 3161(h)(8)(A).

_____
United States District Judge