**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Criminal Action No. 07-46-SLR |
| | : | |
| CHAD MERCER, | : | |
| | : | |
| Defendant. | : | |

<u>**MOTION IN LIMINE REGARDING EVIDENTIARY ISSUES AT TRIAL**</u>

NOW COMES the United States of America, and in connection with the trial of the above case, scheduled to begin March 12, 2008, hereby files this motion in limine for an order regarding evidentiary issues as set forth below:

**I.      FACTUAL BACKGROUND**

The defendant is charged with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).

On February 21, 2007, at approximately 2:00 A.M., Officer Dale Lagace of the New Castle County Police Department, responded to a call regarding a domestic incident on Metten Road, in Newark, Delaware.  While sitting in his patrol vehicle outside of the residence, Officer Lagace observed a car traveling at approximately twice the legal speed limit.  Based upon the speed of the car and the belief that the car might have been involved in the domestic dispute, Officer Lagace followed the car, and caught up with it on Brookside Boulevard, where he turned on his emergency lights.  The car slowed, as if to stop, and defendant ran from the car into the front yard of a house and the car then sped away.

Officer Lagace pursued defendant into the front yard. He observed the defendant trying to hold up his pants, which were falling down, and heard the defendant yelling, "I have warrants." Defendant did not listen to Officer Lagace's commands to stop and get on the ground and Officer Lagace then attempted to use his taser on the defendant. However, the taser malfunctioned and defendant ran onto the front porch of the house. After a struggle, and with the assistance of a second officer, Officer Lagace was able to place defendant in handcuffs and place him in the back of his patrol car. Officer Lagace then returned to the porch to retrieve his taser and found a gun in the area where he had struggled with the defendant.[1]

At approximately 6:00 a.m. (four hours after the arrest), Officer Lagace interviewed defendant. That interview was audiotaped. After being read and waiving his <u>Miranda</u> rights, defendant gave a statement to Officer Lagace. In this statement, defendant stated he had been walking along Marrows Road when a car picked him up and offered him a ride. Defendant stated that he knew the driver of the car only as "Black," and as someone he played basketball with in Wilmington. "Black" was going to drive defendant home and the two men drove for a short while before they saw Officer Lagace's police car activate its lights. After seeing the police car, "Black" reached under his seat, handed defendant an object, and told him he [defendant] was going to get out and run or he was going to "pop" him. Defendant admitted that he knew the object "Black" had given him was a gun.[2]

---

[1]The above facts are all taken from the Court's findings of fact in its Memorandum Order of December 5, 2007 (D.I. 23).

[2]The facts in this paragraph are taken from defendant's recorded statement given to the police on February 21, 2007.

## II.    ARGUMENT

### A.    Defendant cannot establish a justification defense as a matter of law and therefore should be precluded from presenting evidence related to it.

The defendant has stated that he intends to present a necessity defense.  A court may preclude the defendant from raising and presenting evidence of a particular defense where that evidence would be legally insufficient to make out that defense.  See, e.g., United States v. Miller, 59 F.3d 417, 421 n.1 (3d Cir. 1995).  The justification defense has four elements: (1) that the defendant reasonably believed there was an unlawful and imminent threat of death or serious bodily injury to himself or to another person; (2) that the defendant did not recklessly or negligently place himself in a situation where he would be forced to engage in the criminal conduct; (3) that the defendant had no reasonable legal alternative to engaging in the criminal conduct; and (4) that the defendant reasonably believed his criminal conduct would avoid the threatened harm, such that there was a direct causal connection between the criminal action and the avoidance of the threatened harm. United States v. Paolello, 951 F.2d 537, 540 (3d Cir. 1991).  The defendant must prove each element of the offense by a preponderance of evidence. United States v. Dodd, 225 F.3d 340, 342 (3d Cir. 2000).[3]

The Third Circuit has adopted a "restrictive view of the justification defense in the context of 18 U.S.C. § 922 charges," noting that "Congress wrote section 922(g) in absolute terms, leaving little room for any defense based on a lack of intent." Id. at 541.  To this end, Paolello endorsed other circuits' limitations on the justification defense in this context, including the requirement that "an interdicted person . . . possess the firearm no longer than absolutely

---

[3]The Third Circuit has subsumed the defense of "necessity" and the defense of "duress" under the single defense of "justification."  See Paolello, 951 F.2d at 540.

necessary." Id. (quoting United States v. Singleton, 902 F.2d 471, 472-73 (6th Cir. 1990)). Consistent with this, "[t]he threat of harm must be so immediate as to preclude both the opportunity to escape and to seek assistance from law enforcement." Gatto v. United States, 997 F. Supp. 620, 629 (E.D. Pa. 1997).

Here, under what the Government expects will be the defendant's own version of events in this case, the defendant cannot sustain his burden of proof on a justification defense. In support of the justification defense, the Government anticipates that defendant will claim that "Black" handed him a gun and threatened to "pop" him if he did not run. "Black" then gave him the gun (presumably the same gun with which he was threatening to shoot him). Defendant will present evidence that he took the gun and ran with it because he was afraid that if he did not, that "Black" would shoot him. After taking possession of the gun, defendant jumped out of the car and "Black" sped away.

These facts do not establish a justification or necessity defense. Even assuming that defendant can satisfy the preliminary elements of the offense, defendant cannot establish that he "possess[ed] the firearm no longer than absolutely necessary." Paolello, 951 F.2d at 541. To the extent any necessity or threat ever existed, it no longer existed at the point the car sped away and Mercer was being chased by Officer Lagace.[4] However, despite the fact that the necessity had ended, the defendant made no effort to end his possession of the weapon. Officer Lagace, in police uniform, had made the stop in a marked police vehicle, identified himself as a police officer, and commanded defendant to stop. Defendant, however, not only failed to follow this

---

[4]In citing the defendant's version of facts herein, the Government in no way adopts them or agrees to their veracity.

command, he continued to run and struggled with Officer Lagace before being handcuffed and placed in the police car. Defendant never attempted to turn the gun over to Officer Lagace and by his own admission, he did not even inform the officer he had a gun, either during or after the chase. Only after defendant had been placed in the back of the police car and Officer Lagace found the gun and confronted defendant with it, did defendant acknowledge that he had a gun.

It is proper to preclude a justification defense in circumstances, such as these, where the defendant failed to forgo possession of the firearm or to contact law enforcement at the first possible opportunity. See, e.g., United States v. Williams, 389 F.3d 402, 404-05 (2d Cir. 2004) (upholding the district court's refusal to permit a justification defense where the defendant claimed that he took the firearm from a minor child, but where the defendant dropped the firearm and fled from the police when confronted); United States v. Beasley, 346 F.3d 930, 932-33 (9th Cir. 2003) (holding that a felon is not "entitled to a reasonable time period to dispose of the firearm" but rather, a felon is required to "get rid of the firearm as soon as a safe opportunity arises"); United States v. Singleton, 902 F.2d 471, 473 (6th Cir. 1990) (denying the justification defense where defendant claimed to have taken the firearm while escaping from a bungled burglary and kidnaping, but where the defendant went to his friend's house leaving the gun in his car). Accordingly, any evidence relating to a necessity or justification defense is irrelevant and should be excluded at trial.

> **B.    The Government may introduce defendant's audiotaped statements for the truth of the matter asserted, but the defendant is precluded from doing so.**

Defendant's statement to the police was audiotaped. At trial, the Government may seek to  introduce parts or all of that statement into evidence. While generally out of court statements offered to prove the truth of the matter asserted are inadmissible hearsay, an admission by a

party-opponent is not hearsay.  <u>See</u> Fed. R. Ev. 801(d)(2).  Accordingly, at trial the Government is entitled to introduce the defendant's statement following his arrest for the truth of the matters stated therein.

No similar exception from the hearsay rule exists so as to permit the defendant to introduce his own recorded statements into evidence for the truth of the matter asserted.  There is no exception to the hearsay rule that would apply to these statements. Therefore, to the extent that defendant intends to introduce all or part of his statement for the truth of the matter asserted, he may not do so.  <u>See</u> Fed. R. Ev. 802.

## III.    CONCLUSION

WHEREFORE, for the reasons set forth above, the government respectfully moves to preclude the defendant from presenting evidence in support of a justification defense and to preclude defendant from introducing recordings of defendant's statements for the truth of the matter asserted.

Respectfully submitted,

COLM F. CONNOLLY
United States Attorney

BY:    _____s/Lesley F. Wolf_____
       Lesley F. Wolf
       Assistant United States Attorney

Dated: February 22, 2008